# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
### FORT SMITH DIVISION

BILLY C. LOONEY; GOODWIN & HERMAN ASSOCIATES,
LLC, an Arkansas Limited Liability Company; and SILOAM
MINERALS, LLC, an Arkansas Limited Liability Company          **PLAINTIFFS**

v.                              Case No. 15-2108

CHESAPEAKE ENERGY CORPORATION, an Oklahoma
Corporation; CHESAPEAKE OPERATING, L.L.C., formerly doing
business as CHESAPEAKE OPERATING, INC., an Oklahoma
Corporation; CHESAPEAKE EXPLORATION, LLC., an Oklahoma
Limited Liability Company; and CHESAPEAKE ENERGY          **DEFENDANTS**
MARKETING, L.L.C., formerly doing business as CHESAPEAKE
ENERGY MARKETING, INC., an Oklahoma Corporation

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Billy C. Looney, Goodwin & Herman Associates, LLC, and Siloam Minerals,

LLC, individually, and as class representatives on behalf of all similarly situated persons and

entities, by and through counsel, hereby file their First Amended Class Action Complaint against

Defendants, and state and allege as follows:

## PARTIES, JURISDICTION AND VENUE

1.      This is a related case to Case No. 2:13-cv-02064-TLB filed in the United States

District Court, Western District of Arkansas, Fort Smith Division.

2.      Plaintiff Goodwin & Herman Associates, LLC ("Goodwin & Herman") is an

Arkansas limited liability company with its principal place of business in Fairfield Bay,

Arkansas.  Fred Herman ("Herman") is an individual citizen and resident of Fairfield Bay,

Arkansas and is the managing member and owner of Goodwin & Herman.  A copy of Goodwin

& Herman's oil & gas leases that are the subject matter of this action are attached as Exhibit "1."

3.      Plaintiff Siloam Minerals, LLC ("Siloam") is an Arkansas limited liability

company with its principal place of business in Arkansas, and it acquired the mineral interests of

Goodwin & Herman Associates, LLC in Van Buren County, Arkansas.   Fred Herman

("Herman") is an individual citizen and resident of Fairfield Bay, Arkansas and is the managing member and owner of Siloam. A copy of the Goodwin & Herman oil & gas lease assigned to Siloam that is the subject matter of this action is attached as Exhibit "1."

4.     Plaintiff Billy C. Looney ("Looney") is an individual citizen and resident of Tennessee, and owns mineral interests in Franklin County, Arkansas. A copy of Looney's oil & gas lease that is the subject matter of this action, and the assignment of said lease to Chesapeake, are attached as Exhibit "2."

5.     Defendant Chesapeake Energy Corporation ("Chesapeake Energy") is an Oklahoma corporation with its principal place of business in Oklahoma. Chesapeake Energy is doing business in the State of Arkansas and may be served with process through its registered service agent. Personal jurisdiction comports with due process under the Constitution of the United States. Defendants Chesapeake Operating, Inc., Chesapeake Exploration, L.L.C., and Chesapeake Energy Marketing, Inc. are wholly owned subsidiaries of Chesapeake Energy.

6.     Defendant Chesapeake Operating, L.L.C., formerly doing business as Chesapeake Operating, Inc. ("Chesapeake Operating") is an Oklahoma corporation with its principal place of business in Oklahoma. Chesapeake Operating is doing business in the State of Arkansas and may be served with process through its registered service agent. Personal jurisdiction comports with due process under the Constitution of the United States.

7.     Defendant Chesapeake Exploration, L.L.C. ("Chesapeake Exploration") is an Oklahoma limited liability company with its principal place of business in Oklahoma. Chesapeake Exploration is doing business in the State of Arkansas and may be served with process through its registered service agent. Personal jurisdiction comports with due process under the Constitution of the United State

2

8.    Defendant Chesapeake Energy Marketing, L.L.C., formerly doing business as Chesapeake Energy Marketing, Inc. ("CEMI") is an Oklahoma corporation with its principal place of business in Oklahoma.  CEMI is doing business in the State of Arkansas and may be served with process through its registered service agent.  Personal jurisdiction comports with due process under the Constitution of the United States.

9.    Chesapeake Energy, Chesapeake Operating, Chesapeake Exploration and CEMI (collectively, "Chesapeake") are or were the operators of wells and/or lessees of oil and gas leases in the State of Arkansas.  CEMI is the marketing entity used by Chesapeake. Chesapeake Exploration is the lessor of the oil & gas interests.  Chesapeake Operating is the operator of the producing wells.  Chesapeake Energy, Chesapeake Operating, Chesapeake Exploration, and CEMI will sometimes herein be collectively referred to as "the Chesapeake Defendants."

10.    Chesapeake Energy managed, directed and controlled Chesapeake Operating, Chesapeake Exploration, and CEMI and their assets such that they were mere instrumentalities of each other, and these entities were the alter-egos of Chesapeake Energy (as well as each other). Chesapeake Energy, Chesapeake Operating, Chesapeake Exploration, and CEMI are in fact the alter egos of each other and the corporate separateness of each of these defendants should be disregarded.

11.    The amount in controversy in the Class Complaint exceeds $5,000,000, exclusive of interest and costs.

12.    This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

13.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Western District of Arkansas.  The Arkansas Wells covered by the allegations of the Complaint are exclusively located in the State of Arkansas, and one or more of the Arkansas Wells in which Plaintiffs own

minerals are located in the Western District of Arkansas. One or more of Plaintiffs are citizens of the State of Arkansas, reside in the Western District of Arkansas, and own mineral interests located in the Western District of Arkansas. One or more of the wrongful acts alleged herein occurred and caused damages to Plaintiffs and Class members in the Western District of Arkansas. The gas that is the subject of this class action is exclusively produced in the State of Arkansas, and a portion of the gas is produced and sold in the Western District of Arkansas.

## GENERAL ALLEGATIONS AND FACTUAL BACKGROUND

14. As used herein, the term "royalty" means lessor royalty interests, and does not include overriding royalty interests.

15. As used herein, the term "gas" includes hydrocarbon substances, but does not include crude oil or condensate.

16. As used herein, the term "the Arkansas Wells" are those gas wells in the State of Arkansas in which Chesapeake owns (or has owned) a working interest.

17. Plaintiffs are mineral interest owners in one or more of the Arkansas Wells and the Class members are mineral interest owners in the Arkansas Wells. Plaintiffs' and Class members' mineral interests in the Arkansas Wells are subject to various oil and gas leases pursuant to which they were drilled and completed.

18. Chesapeake, during the time periods at issue, has been a working interest owner in the Arkansas Wells, including wells in the Arkoma Basin and wells in the Fayetteville Shale. In some of the Arkansas Wells, Chesapeake is or was the operator of the well; and in other wells, a third party (such as \SEECO, Inc.) is the operator and Chesapeake has held non-operating working interests therein.

19.     As a working interest owner, Chesapeake owed royalty payments to the Plaintiffs and Class members on gas produced under their leases from the Arkansas Wells. Chesapeake made its royalty payments to the Plaintiffs and Class members either directly or through the operator of those wells in which Chesapeake held non-operating working interests. In all instances, however, Chesapeake, as the lessee, was responsible to the Plaintiffs and Class members for the proper determination, calculation, and payment of royalties due and owing by Chesapeake to the Plaintiffs and Class members on gas produced from the Arkansas Wells in which Chesapeake held a working interest.

20.     Chesapeake sold its leasehold interests in the Fayetteville Shale wells to BHP Billiton Petroleum (Fayetteville), LLC, effective January 1, 2011, but still retains working interests (operating and non-operating) in the Arkansas Wells that are located in the Arkoma Basin.

21.     Under Plaintiffs' and the Class members' leases, Chesapeake is responsible for marketing the gas produced under the leases and for the proper determination, calculation, distribution, and payment of royalties due to Plaintiffs and Class members on gas produced by Defendants. Chesapeake has within their possession, custody and control records that identify all persons to whom they have paid royalties for gas produced from the Arkansas Wells.

### Chesapeake's Gas Marketing And Royalty Calculations

22.     Chesapeake did not market its share of gas production from the Arkansas Wells in which it held a working interest. Instead, Chesapeake designated CEMI as Chesapeake's agent to conduct gas marketing and administration on its behalf. In order to accomplish this, Chesapeake and CEMI entered into one or more contracts under which Chesapeake purported to "sell" its gas production from the Arkansas Wells to CEMI at or near the wellhead. CEMI then made

arrangements for Chesapeake's gas production to be gathered, compressed, and dehydrated (and, in some instances, treated) by an affiliate, Chesapeake Midstream, or by third-party (unaffiliated) midstream companies; and for Chesapeake's gas to be sold to third-party purchasers at various points along various transmission pipelines such as Centerpoint, Ozark Gas, Fayetteville Express, and others. CEMI thereafter transferred to Chesapeake an amount of money equal to 97% of the sales proceeds received by CEMI (3% was retained by CEMI as a marketing fee) less costs and fees incurred for gathering, compression, dehydration, treating, and transportation, and without payment for the value of gas used as fuel in such operations.

23.     The contract(s) between Chesapeake and CEMI was not a bona fide, arm's length sales transaction, but an intra-company transaction entered to facilitate CEMI's marketing of Chesapeake's gas.

24.     Under its standard royalty calculation methodology for any given Arkansas Well, Chesapeake determined a gross value for its production based upon the CEMI weighted average sales price multiplied times the volumes of gas produced from the well, and then (a) deducted an amount of money attributable to the amount of gas that was used as fuel (or was lost or otherwise unaccounted for) on the gathering system; (b) deducted costs and fees for third-party (unaffiliated) gathering, compression, dehydration, treating, and transportation; and (c) arrived at a net value, which was used by Chesapeake to make its royalty payments. Under its standard royalty calculation methodology, Chesapeake did not deduct the 3% "marketing fee" charged by CEMI to Chesapeake, nor any costs of gathering, compression, dehydration or treating on gathering systems owned by affiliates, such as Chesapeake Midstream and Access Midstream. The transportation fees and costs deducted by Chesapeake included both "reservation fees" (paid by CEMI to transmission pipelines to reserve capacity on the pipeline) and also commodity fees

(paid by CEMI to transmission pipelines based on the volumes of gas actually transported). The proceeds used by Chesapeake to calculate its royalties were based on CEMI's physical sales of gas and did not include the substantial proceeds the Chesapeake Defendants realized through their gas hedging transactions (derivatives).

25.     When Chesapeake sent its royalty payments, including to the Plaintiffs and the Class members, the payment was accompanied by a "check stub" which purported to contain material and truthful information about Chesapeake's calculation of the royalty payment. Chesapeake's check stubs uniformly had a blank space or zero under the "deductions" column, and thereby (falsely) represented that no deductions had been taken by Chesapeake in calculating the royalty payment. Chesapeake failed to disclose that the values and unit prices shown on the check stub were not gross values and prices, but were net values and prices, i.e., value and prices that were net of the monetary and fuel volume deductions taken by Chesapeake as part of its royalty calculation practices.

26.     Some of Chesapeake's leases for the Arkansas Wells contain provisions expressly authorizing Chesapeake to deduct gathering, compression, dehydration, treating, and/or transportation costs ("post-production costs") when calculating its royalty payments; other leases expressly preclude Chesapeake from deducting post-production costs; and other leases are silent on the deduction of post-production costs and thereby, as a matter of law, preclude Chesapeake from deducting post-production costs. Even though Chesapeake has a number of leases which preclude the deduction of post-production costs, Chesapeake has routinely ignored those lease provisions and, as a matter of standard practice and policy, treated those leases as entitling Chesapeake to take deductions for post-production costs. If a royalty payee complains about Chesapeake's deductions, Chesapeake may refund the deductions taken improperly and cease

taking deductions for such post-production costs. The problem, however, for lessors holding "no deduct" leases is that Chesapeake's check stubs represent (falsely) that Chesapeake is taking no deductions. Chesapeake thereby misleads its "no deduct" lessors into believing that Chesapeake is complying with those leases and lulls the lessors into not making a demand upon Chesapeake to comply with the leases, whereupon Chesapeake continues to secretly and improperly apply its standard practice and take deductions of post-production costs when calculating its royalty payments.

## CLASS ACTION ALLEGATIONS

27.     Defendants failed to pay the true and correct royalties due and owing to Plaintiffs and Class members, who have been damaged as a result of Defendants' breaches of duties and obligations arising under the leases and under statutory and common law.

28.     Plaintiffs bring this action as a Class Action and as the representatives of the below-named Classes pursuant Fed. R. Civ. P. 23 (b) (3).  Plaintiffs seek the certification of the Classes comprised as follows:

> **Class One**:  All non-excluded persons or entities who are, or have been since March 6, 2008, royalty owners in Arkansas wells[1] and have received royalty payments under leases in which Chesapeake owns or owned an interest as lessee and that do not contain language expressly authorizing the lessee to deduct post-production costs from gas royalties.
>
> **Class Two**:  All non-excluded persons or entities who are, or have been since March 6, 2008, royalty owners in Arkansas wells and have received royalty payments under leases in which Chesapeake owns or owned an interest as lessee and that contain language expressly authorizing the lessee to deduct post-production costs from gas royalties.
>
> **Class Three**:  All non-excluded persons or entities who are, or have been since March 6, 2008, royalty owners in Arkansas wells

---

[1] "Arkansas wells" is defined throughout as gas wells in the State of Arkansas in which Chesapeake owns, or has owned, a working interest (operating or non-operating).

and have received royalty payments under leases in which Chesapeake owns or owned an interest as lessee and which expressly obligate the lessee to pay royalties on the market value of gas used by the lessee off the leased premises.

**Class Four**:  All non-excluded persons or entities who are, or have been since March 6, 2008, royalty owners in Arkansas wells and have received royalty payments under leases in which Chesapeake owns or owned an interest as lessee and which include a "market enhancement" clause or similar clause permitting the lessee to only take deductions from gas royalties for costs incurred to enhance the value of gas that the lessor has made marketable or ready for sale or use.

**Class Five:**  All non-excluded persons or entities who are, or have been since March 6, 2008, royalty owners in Arkansas wells and have received royalty payments under leases in which Chesapeake owns or owned an interest as lessee and that obligate the lessee to pay royalties on a "proceeds" basis, including on a "gross proceeds," "proceeds," or "net proceeds" basis.

**Class Six:**  All non-excluded persons or entities who are, or have been since March 6, 2008, royalty owners in Arkansas wells and who have received royalty payment statements from Chesapeake.

As to each of the Classes, the Class claims relate only to the proper payment for gas produced from the Class Wells located in the State of Arkansas.  The Class does not include overriding royalty owners or other owners who derive their interest through the oil and gas lessee.

The Class does not include royalty payees who received royalty payments that Chesapeake, as well operator, was making on behalf of non-operating working interest owners in the well.

The Class claims shall not include royalty owners' claims in those wells and during those periods where Defendants were non-operating working interest owners and did not, through themselves or related entities, market their production and pay royalties.  The Class claims also exclude forced pooled royalty owners.  Also excluded from the Class are (a) all governmental entities, including federal, state and local governments and their respective agencies, departments, or instrumentalities; (b) the States and territories of the United States or any foreign citizens, states, territories or entities; (c) the United States of America; (d) publicly traded oil and gas exploration companies and their affiliates; (e) owners of any non-operating working interest for which any of Defendants,

or any of their agents or representatives, as operator, disburses royalty as required by Arkansas law; and (f) any persons or entities that Plaintiffs' counsel is, or may be, prohibited from representing under the Arkansas Rules of Professional Conduct.

29.     Members of each of the above-described classes are hereafter referred to as "Class members."

30.     Upon information and belief, the Class Members number in the thousands, and each of the Classes is so numerous and spread out that joinder of all members is impracticable. The claims cover royalty payments made by Defendants since March 6, 2008, including, but not limited to, payment of royalty in Arkansas's Arkoma and Fayetteville Shale gas basins and in any other wells in which Defendants own or owned working interests and have paid royalty to Plaintiffs and Class members.

31.     One or more Defendants are or were owners of extensive oil and gas leasehold interests within the State of Arkansas, and operate or operated many wells drilled on leaseholds and units located within the State of Arkansas.

32.     As to each Class, the averments of fact and questions of law herein are common to the Class. Those common questions are capable of classwide resolution, and answering them will resolve issues central to the validity of Plaintiffs' claims. Such questions include, but are not limited to:

(a)     Whether the costs deducted by Defendants in calculating royalty payments were improper;

(b)     Whether the costs deducted by Defendants for fuel usage were improper;

(c)     Whether the costs deducted by Defendants for transportation reservation fees were improper;

(d)     Whether Chesapeake failed to pay royalties based on the actual proceeds received by Chesapeake;

(e)     Whether the proceeds/economic benefits the Chesapeake Defendants realized through their hedging transactions (derivatives) should have been included by Chesapeake when calculating its proceeds for royalty payment purposes;

(f)     Whether Defendants have failed to account or properly account for costs incurred and royalties owed to Plaintiffs and Class members;

(g)     Whether Chesapeake's standard check stub forms contain material omissions and misrepresentations;

(h)     Whether the leases should be forfeited for violations of A.C.A. §§ 15-74-601, *et seq.* and 15-74-701, *et seq*;

(i)     Whether Chesapeake has been unjustly enriched by their improper actions;

(j)     Whether Chesapeake should be required to provide an accounting to Class Members.

33.    The claims asserted by Plaintiffs are typical of the claims of the Class.

34.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests do not conflict with the interests of the Class. Additionally, Plaintiffs are represented by counsel both skilled and experienced in oil and gas accounting and complex civil litigation matters, including, but not limited to, oil and gas class actions. One or more of Plaintiffs' counsel have handled substantial complex oil and gas related litigation matters in the past.

35.    The averments of fact and questions of law which are common to the members of the Class predominate over any questions affecting only individual members. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. A class action is the superior means of adjudicating these claims because:

(a)     The questions of law and fact are so uniform across the Class that there is no reason why individual Class members would want to control the prosecution of their own actions, at their own expense;

(b)     To Plaintiffs' knowledge, there is no pending litigation against Defendants that fully incorporates all of the statewide claims of improper deductions from mineral interest proceeds related to the Class Wells;

(c)     The interests of all parties and the judiciary in resolving these matters in one forum without the need for a multiplicity of actions are great and substantial;

(d)     The difficulties in managing this class action will be slight in relation to the potential benefits to be achieved on behalf of each and every Class Member, and not just those who can afford to bring their own actions;

(e)     Defendants have, on a statewide basis, upon information and belief, fraudulently concealed all or a portion of their actions which give rise to the Class members' causes of action. Many of the Class members may never discover the wrongful acts of Defendants. Thus, in the absence of a class action, Defendants, through their class-wide concealment, may successfully be unjustly enriched to the detriment of the unknowing Class members; and

(f)     It will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims to promote economies of time and resources.

## CLASS I

36.     Under leases entered by Plaintiff Looney and members of Class I, Chesapeake is obligated to bear all post-production costs. The leases do not permit Chesapeake to deduct any post-production costs when calculating their royalty payments.

37.     In violation of those leases and other duties, Chesapeake has taken post-production cost deductions from the royalty payments owed, respectively, to Plaintiff Looney and the members of Class I.

## CLASS II

38.     Under the leases entered by Plaintiffs Goodwin & Herman, and Siloam and the members of Class II, Defendants are allowed to take certain deductions.  The leases do not, however, authorize Defendants to make deductions from royalties for transmission pipeline reservation fees. Defendants have entered into contracts under which they pay fees to third parties to reserve transmission pipeline capacity. Defendants deduct from Plaintiffs' and Class

12

members' royalties a proportionate share of the reservation fees regardless of whether Defendants actually used the pipeline capacity to transport Plaintiffs' and the Class members' gas to a point of sale. Defendants have thereby taken deductions from the Plaintiffs' and the Class members' royalties for costs that were not actually incurred for the transportation of Plaintiffs' and the Class members' gas.  These deductions are not permitted under the leases. Further, Chesapeake has, upon information and belief, sold reserved but unused pipeline capacity to third parties, for a profit, but still charged the full reservation fee to Plaintiffs and the Class members as a deduction from royalty payments.

## CLASS III

39.     Plaintiffs Goodwin & Herman, Siloam, Looney, and members of Class III entered into leases that expressly require Defendants to pay royalties based on the market value of gas used by Defendants off the leased premises. Defendants have used gas off the premises for gathering system fuel, but have failed to pay royalties on such gas.

## CLASS IV

40.     Plaintiffs Goodwin & Herman, Siloam and members of Class IV entered into leases that include provisions expressly precluding the lessee from deducting costs incurred to transform the gas into marketable form or make it ready for sale or use.  Under the leases, the lessee is permitted to make deductions from royalties only for costs incurred in enhancing the value of gas that has been placed in a marketable form or is ready for sale or use.

41.     Notwithstanding such provisions and in violation of them, Defendants have taken deductions for gathering system costs that were incurred to transform gas into marketable form or make it ready for sale or use, and/or taken deductions for transportation costs that did not enhance the value of the gas.

## CLASS V

42.     Plaintiffs Looney, Goodwin & Herman, Siloam and the members of Class V entered leases that require the lessee to pay royalties on a proceeds basis. Based on duties implied by law, Chesapeake is obligated under the leases to market its gas production and procure the highest prices obtainable.

43.     The marketing of gas involves finding buyers, securing a supply, and arranging a transaction. In the marketing of gas, there are two types of trades: physical trades and financial trades. The physical trading of gas is the basic sale of the commodity itself. The financial trading involves financial instruments, such as derivatives. In the latter case, buyers and sellers do not take physical delivery of the commodity. The values assigned to the financial instruments are derived from the value of the gas supply.

44.     As is true of all commodities, the price of gas is volatile. Companies such as the Chesapeake Defendants use financial instruments to hedge against the volatility of gas prices in order to maintain financial stability and increase profits. The Chesapeake Defendants enter into derivative instruments, such as swaps and collars, with third parties. These contracts convert the market price related to portions of anticipated sales of gas to fixed prices. The Chesapeake Defendants are at risk if the market values of these derivatives go up. However, such risks are offset by changes in the price of the underlying hedged items, i.e., Chesapeake's on-going gas production.

45.     The Chesapeake Defendants have entered into a series of derivative transactions qualifying as financial cash flow hedges that exist parallel to underlying physical transactions.

The Chesapeake Defendants view their hedging transactions as an integral part of their gas marketing operations. This is evident, for example, in Chesapeake Energy's 2010 SEC10-K, where Chesapeake Energy reported "total natural gas sales" for 2010 of $5.576 billion, comprised of $3.169 billion in natural gas sales, $1.982 billion in natural gas derivatives (realized gains), and $.425 billion in natural gas derivatives (unrealized gains). Thus, the Chesapeake Defendants, when reporting their total natural gas sales, combined revenues for both physical transactions and derivative transactions.

46.    There could be no derivative transaction without the underlying physical commodity. The derivative contracts are predicated upon the production and marketing of the physical commodity. The proceeds from the hedging instruments are attributable to the Chesapeake Defendants' entire gas operations, including gas attributable to the Arkansas Wells, and, therefore, the gains/proceeds from the Chesapeake Defendants' hedging transactions should be included within Chesapeake's proceeds for royalty calculation purposes. To the extent, however, that the Chesapeake Defendants realized losses on their hedging transactions, such losses should not be included in Chesapeake's royalty calculation proceeds, because Chesapeake is obligated to pay royalties based on the highest prices obtainable, which would be prices that are no less than the market values received by Chesapeake in its physical transactions.

47.    When calculating Chesapeake's royalty payments, the Chesapeake Defendants failed to include the gains/proceeds they realized on their hedging transactions. Chesapeake thereby was skimming monies when it failed to pay royalties on the total and true proceeds it received, and breached the royalty payment obligations it owed to Plaintiffs and the members of Class V. Chesapeake also thereby received more from the sale of gas than Chesapeake paid to

the Plaintiffs and Class members in violation of Ark. Code Ann. §§15-74-601, *et seq.*, and 15-74-701, *et seq.*

**CLASS VI**

48.     Chesapeake's royalty payment statements, or check stubs, sent to all Plaintiffs and Class members, have been, at all relevant times, in a format common to all Plaintiffs and Class members. Chesapeake's check stubs are confusing and misleading, and fail to provide an accurate and/or comprehensible accounting of the royalty calculation the check stubs purport to reflect. The check stubs omit, misstate, or state in a confusing manner, information material to the Class members, including information relating to the price of gas produced and sold by Chesapeake, and to the deductions taken by Chesapeake when calculating its royalty payments.

49.     The check stubs failed to disclose that Chesapeake paid royalties on gas sales volumes and not wellhead volumes; failed to disclose that post-production costs had been deducted by Chesapeake when calculating its royalty payments; failed to disclose fuel use and other volumetric reductions/deductions between the wellhead and sales point; and/or failed to disclose that the values and unit prices shown on the check stubs were net values and net prices, not gross values and gross prices.

50.     Upon information and belief, Chesapeake's actions described above began in the mid-to-late 1990s in one form or another (and possibly before, as to some wells) and continue through today. Chesapeake has actively participated in the fraudulent scheme and profited at the expense of Plaintiffs and the Class members. Chesapeake has failed to disclose, and has actively and fraudulently concealed, one or more of these actions from Plaintiffs and Class members.

51.     The relationship between Chesapeake and Plaintiffs and the Class members is such that Plaintiffs and the Class members have reasonably placed trust and confidence in

16

Chesapeake such that each Chesapeake will act as a fiduciary, quasi-fiduciary, and prudent operator and act in good faith with respect to its obligations to Plaintiffs and the Class members. Chesapeake has, however, shrouded its production and royalty accounting functions in secrecy, and intentionally deprived Plaintiffs and the Class members of information that is material to their royalty calculation. In essence, Chesapeake knows that it can make unlawful and improper deductions, and Plaintiffs and the Class members are never the wiser because their check stubs falsely represent, for example, that Chesapeake is taking no deductions. Chesapeake's duties exist, separate and apart from the leases, based on the fact that Plaintiffs and the Class members must solely rely on Chesapeake. Chesapeake has accepted and agreed to these duties based, in part, on this confidential relationship and exclusive control of all information. At bare minimum, Chesapeake has failed to act as a reasonably prudent operator and lessee.

52.    Chesapeake is in exclusive possession, custody and control of all information concerning its calculation and payment of royalty. Plaintiffs and the Class members do not have access to this information and are compelled to rely on Chesapeake to accurately, fairly and honestly pay and report royalties to Plaintiffs and the Class members.

53    Chesapeake has a duty under Arkansas law to pay royalties accurately and to report its royalty calculations to Plaintiffs and the Class members accurately, including, but not limited to, full disclosure of all material information pertaining to production volumes; sales volumes; gross values and unit prices; deductions (volumetric or monetary) for gas used as fuel; deductions for post-production costs; and net values and prices. Chesapeake has failed to fulfill these duties, and done so intentionally, in bad faith, and in willful disregard of the rights of Plaintiffs and the Class members.

54.     Chesapeake has a statutory duty to comply with the disclosure and payment obligations set forth in Arkansas law, in particular, the duties and obligations set forth in Ark. Code Ann. §§ 15-74-601, *et seq.* and Ark. Code Ann. §§ 15-74-701, *et seq.*  Chesapeake has intentionally violated Arkansas law with the intent to deceive and defraud Plaintiffs and Class members.

55.     Chesapeake failed in its duties owed to Plaintiffs and the Class to pay the proper royalties, to provide timely and accurate production and payment information, and not to misrepresent or conceal information. Chesapeake's check stubs uniformly contained misrepresentations to Plaintiffs and the Class as a whole, and the check stubs were designed to deceive Plaintiffs and the Class members and lead them into a false sense of security by reflecting information and royalty payments that were represented by Chesapeake to be true and accurate, but that were false and inaccurate. Chesapeake intended to lead Plaintiffs and the Class as a whole to rely on this information as true and accurate when it was not, and to believe that Chesapeake was following the law and its leases in paying royalties.

56.     Plaintiffs and the Class members did rely, to their detriment, upon the information on their check stubs.  Chesapeake has violated its obligations and duties owed to Plaintiffs and the Class.   Chesapeake has kept money owed to Plaintiffs and the Class and reinvested such amounts in their business activities, thus potentially earning additional profits.  Plaintiffs and the Class are entitled to an order of disgorgement of these profits and other benefits, if any.

57.     Plaintiffs and members of Class VI are entitled to an accounting from Chesapeake for all material components of Chesapeake's royalty calculations, including material information relating to Chesapeake's production volumes, sales volumes, sales prices, total proceeds, deductions (monetary or volumetric), and net proceeds or values. Chesapeake should also be

enjoined from utilizing its deceptive check stub form in making future royalty payment to Plaintiffs and the Class members.

## FIRST CLAIM FOR RELIEF
## BREACH OF CONTRACT

58.     As set out above, Plaintiffs and the Class entered into the gas leases and one or more Defendants were the operators and/or non-operators marketing the gas under the gas leases. Defendants are required to pay and report royalties to Plaintiffs and the Class in accordance with express provisions in the leases and in accordance with implied contractual duties imposed by law.

59.     As set forth above, Defendants have breached the express terms of the gas leases and duties imposed by law, including the implied duties of good faith and fair dealing, the duty to market, the duty to procure the highest prices obtainable, and the duty to act as a reasonably prudent operator.

60.     Plaintiffs and the Class did what their leases required of them.

61.     Defendants' actions have damaged the Plaintiffs and the Class.

## SECOND CLAIM FOR RELIEF
## BREACH OF COMMON LAW AND STATUTORY DUTIES

62.     As set forth above, Defendants are required to act as a reasonably prudent operator, a fiduciary, and a quasi-fiduciary, to act in good faith with respect to their obligations to Plaintiffs and Class members, and to comply with Arkansas statutory law with respect to disclosure and payment of royalty.

63.     As set forth above, Defendants have breached their duties and obligations to Plaintiffs and Class members.

64.     Plaintiffs and the Class did what their leases required of them.

19

65.     Defendants' actions have damaged the Plaintiffs and the Class.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF ARK. CODE ANN. § 15-74-601, *ET SEQ.* & § 15-74-701, *ET SEQ*

66.     As set out above, Defendants, without just cause and in bad faith, willfully withheld payments from the Plaintiffs and the Class, who are legally entitled to the true and full proceeds and values realized from the production.

67.     Defendants' intentional failure to pay royalties due and owing on the true value and proceeds received or that should have been received by each of them for the hydrocarbons constitutes a violation of Ark. Code Ann. § 15-74-601, *et seq.* and Ark. Code Ann. § 15-74-701, *et seq.*

68.     Plaintiffs have provided written notice of nonpayment of the proceeds as required by Ark. Code Ann. § 17-74-603.

## FOURTH CLAIM FOR RELIEF
## DECEPTIVE TRADE PRACTICES ACT

69.     As set out above, Defendants engaged in unconscionable, false and deceptive acts and practices in violation of Ark. Code Ann. § 4-88-107(a)(10), all of which damaged Plaintiffs and the Class.

## FIFTH CLAIM FOR RELIEF
## UNJUST ENRICHMENT

70.     As set out above, Defendants have taken and received property belonging to Plaintiffs and the Class.

71.     Defendants' acts have unjustly enriched each of them at the expense of Plaintiffs and the Class, resulting in an injustice.

### SIXTH CLAIM FOR RELIEF
### ACCOUNTING OF ROYALTIES DUE AND OWING
### (AS TO DEFENDANT CHESAPEAKE ON BEHALF OF CLASS VI)

72.     Chesapeake, as a gas lessee and/or operator, is a fiduciary or quasi-fiduciary to Plaintiffs and Class members, and owes a duty of full and accurate disclosure concerning the production, marketing, and sale of the gas that is leased to it by Plaintiffs and Class members.

73.     As set forth above, Chesapeake has issued confusing and misleading payment statements to members of Class VI.  Those payment statements, or check stubs, do not provide accurate information concerning the true volumes of gas produced by Chesapeake, the true volumes sold by Chesapeake, the true revenues and prices obtained by Chesapeake, and the true deductions (monetary and volumetric) taken by Chesapeake when calculating its payments.

74.     Plaintiffs and the members of Class VI are entitled to a full and detailed accounting of the royalty payments made to them, including: a full explanation of all royalties owed; complete information concerning volumes produced, volumes sold, revenues and prices obtained, and deductions (monetary and volumetric) taken; a showing that the revenues and prices were the highest obtainable; and a showing that the deductions taken were reasonable and reflect costs actually incurred.

75.     As set out above, Defendants have violated their obligations and duties owed to Plaintiffs and the Class.

76.     Plaintiffs and the Class are entitled to an accounting reflecting the amount of any additional profits and for an order of disgorgement of those profits and other benefits, if any.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against each Defendant and in favor of themselves and the Classes, for the following relief:

(a)     Certify this case as a class action pursuant to Fed R. Civ. P. 23 and appoint Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

(b)     Money damages, the amount of which is presently unknown, but is believed to be in excess of $5,000,000;

(c)     As a result of Defendants' actions, Plaintiffs and the Class pray that each Defendant be required to disgorge all monies, consideration, and other value obtained by such Defendant as a result of a violation of their obligations and duties to the Plaintiffs, together with such profits, if any,  Defendant has realized from its actions, including its unjust enrichment;

(d)     Statutory damages, interest and/or penalties under Arkansas law, including Ark. Code Ann. §§ 15-74-601, *et seq.*, Ark. Code Ann. § 15-74-701, *et seq.* and Ark. Code Ann. § 4-88-101 *et seq.*, including forfeiture of the gas leases held by the Defendants;

(e)     An accounting as described hereinabove;

(f)     Costs, including reasonable attorneys' fees and litigation and other expenses and fees, including experts' fees, as permitted by law;

(g)     Injunctive and other provisional relief as set forth herein; and

(h)     Such other relief in law and equity, including, without limitation, costs incurred by Plaintiffs and the Class, pre-judgment interest, post-judgment interest, and any other relief to which Plaintiffs and the Classes show themselves to be entitled.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

DATED:  June 23, 2015.

Respectfully Submitted:

/s/ Thomas P. Thrash
Thomas P. Thrash (ABA No. 80147)
Marcus N. Bozeman (ABA No. 95287)
THRASH LAW FIRM, P.A.
1101 Garland Street
Little Rock, AR 72201
Phone: (501) 374-1058
Fax: (501) 374-2222

Larry D. Moffett, *Pro Hac Vice*
DANIEL COKER HORTON & BELL,
265 N. Lamar Blvd., Suite R
P.O. Box 1396
Oxford, MS 38655-1396
Phone:  (662) 232-8979
Fax:  (662) 232-8940

Don Barrett, *Pro Hac Vice*
Brian K. Herrington, *Pro Hac Vice*
BARRETT LAW GROUP, P.A.
404 Court Square
P.O. Drawer 927
Lexington, MS 39095-0927
Phone: (662) 834-2488
Fax: (662) 834-2628

David Stellings, *Pro Hac Vice*
Daniel Seltz, *Pro Hac Vice*
LIEFF CABRASER HEIMANN &
    BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Phone:  (212) 355-9500
Fax:  (213) 355-9592

Steven Shults (ABA No. 78139)
Debra Brown (ABA No. 80068)
SHULTS & BROWN, LLP
200 West Capitol Avenue, Suite 1600
Little Rock, AR 72201-3637
Phone: (501) 375-2301
Fax:  (501) 375-6861

Matthew H.P. Warner (ABA No. 92031)
GRAVES WARNER PLC
1901 Napa Valley Drive
Little Rock, AR 72212
Phone: (501) 978-6140
Fax: (501) 421-8911 fax

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that the foregoing *First Amended Complaint* was served on June 23, 2015, by electronic mail and via the CM/ECF electronic case filing system, to the following:

John Baker
Lyn P. Pruitt
Adria W. Conklin
MITCHELL, WILLIAMS, SELIG,   GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201

/s/ Thomas P. Thrash
Thomas P. Thrash